IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                            No. CR 06-1795 RB

STEVE NATHANIEL JACKSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant Steve Nathaniel Jackson was convicted and sentenced in 2007 for a crack cocaine offense, before Congress enacted the Fair Sentencing Act of 2010 that mitigated the harsh treatment of such offenders. The Fair Sentencing Act's relief, however, was only prospective. Under the First Step Act of 2018, federal district courts may now retroactively apply the Fair Sentencing Act to reduce the sentences of offenders who were convicted prior to 2010 under then-existing mandatory minimum sentencing statutes. Relevant here, the Fair Sentencing Act raised the quantities of crack cocaine required to trigger sentences imposed pursuant to 21 U.S.C. § 841(b). In 2007, the Court sentenced Mr. Jackson to a then-mandatory life sentence. Today, the Court will grant in part his motion for a sentence reduction.

**I.**     **Background**

Mr. Jackson was indicted and went to trial on one count: possession with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of cocaine base, more commonly known as "crack." (*See* Docs. 10; 66.) The United States Probation Office (USPO) drafted a Presentence Report using the 2006 edition of the United States Sentencing Guidelines Manual. (*See* Presentence Report (PSR) ¶ 18.[1]) Considering the 214.7 grams of cocaine

---

[1] All citations to the PSR are to the copy provided to the Court by the USPO.

base attributed to Mr. Jackson, the USPO calculated a base offense level of 34, with a three-level increase under the Career Criminal Provision for a total offense level of 37. (*See id.* ¶¶ 19, 25.) Based on a total offense level of 37 and a criminal history category of VI, the guideline imprisonment range was 360 months to life, but Mr. Jackson was subject to a mandatory sentence of life imprisonment pursuant to 21 U.S.C. § 851. (*See id.* ¶ 96.) The enhancement under § 851 increased Mr. Jackson's "statutory penalties based on [his] prior [state] felony drug convictions" including: (1) a 1996 conviction for possession of a controlled substance; (2) a 1998 conviction for trafficking a controlled substance (cocaine); and (3) a 2004 conviction for two counts of a controlled substance (methamphetamine). (*Id.* ¶ 2.)

On August 22, 2007, the Court sentenced Mr. Jackson to life imprisonment to be followed by 10 years of supervised release. (Doc. 71.) Discussing the mandatory life sentence at the sentencing hearing, the undersigned commented:

> I'm here to impose a devastating sentence. . . . I take no joy in it. Frankly, if there weren't the mandatory nature of this, I can tell you, as a matter of my discretion, life would certainly be on the table; I'd be looking at it. This Guideline—this offense level and your criminal history category put you at 360 to life . . . . And I'm not sure that I'd go there. And for the record that we're making here today that an appellate court will have a chance to review, they need to know that while life may have been on the table in my discretion, I'm not sure I would have done that. You're 29 . . . . I might well have found something less than life[] significant, but sufficient and not greater than necessary[;] . . . a sentence that's enough, but not too much. [Thirty] years might have been that sentence, but that's not what we're dealing with today.

(Doc. 76 at 11.) Pursuant to Guideline 5G1.1, the Court then sentenced Mr. Jackson to life.

Mr. Jackson appealed his sentence, and the Tenth Circuit affirmed it. *See United States v. Jackson*, 334 F. App'x 900 (10th Cir. 2009). He has filed two motions to vacate his sentence pursuant to 28 U.S.C. § 2255. (Docs. 86; 129.) The Court denied the first and dismissed the second, and the Tenth Circuit denied his request for a certificate of appealability on the first. (*See* Docs.

2

94; 104; 134.) He filed a motion for relief from judgment, which the Court denied in part and dismissed in part. (Docs. 100–01.) The Court denied two motions to reduce the sentence pursuant to 18 U.S.C. § 3582(c). (Docs. 105; 111; 119; 125.) Mr. Jackson moved two times for the Court to reconsider its orders denying his motions; the Court denied both motions. (Docs. 113–18.)

With the assistance of counsel, Mr. Jackson filed a motion for a reduction in his sentence pursuant to Section 404 of the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act (the First Step Act), Pub. L. No. 115-391, 132 Stat. 5194 (2018). (*See* Doc. 139.) The United States Probation Office prepared a memorandum to assist the Court in determining whether Mr. Jackson is eligible for a sentence reduction under the First Step Act. (*See* Doc. 146.) Having reviewed the briefs, the record, and the applicable law, the Court finds the motion is well-taken and should be **granted in part**.

II. Discussion

    A. **Mr. Jackson is eligible for a sentence reduction under the First Step Act.**

At issue before the Court is whether Mr. Jackson is eligible for a sentence reduction under Section 404 of the First Step Act. Section 404 makes Sections 2 and 3 of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, retroactive. *See United States v. Lewis*, 398 F. Supp. 3d 945, 970 (D.N.M. May 21, 2019). The relevant sections of the Fair Sentencing Act increased the amount of crack cocaine required to trigger mandatory minimum penalties as set out in 21 U.S.C. §§ 841(b)(1)(A) and (B). The Fair Sentencing Act did not apply retroactively. *See id.* Section 404 of the First Step Act "makes the Fair Sentencing Act's sections 2 and 3 retroactive." *See id.* (citing First Step Act § 404).

To be eligible for relief under Section 404, a defendant must have both violated and been sentenced for a covered offense. *See* First Step Act § 404(a)–(b). The statute defines a "covered

offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . ." *Id.* § 404(a). A violation of 21 U.S.C. § 841(b) is a covered offense. *See Lewis*, 398 F. Supp. 3d at 976 (noting that violations of 21 U.S.C. §§ 841(a) and (b) are covered offenses). As it does not appear that Mr. Jackson has previously sought or received a reduction under the Fair Sentencing Act or First Step Act, *see id.* at 977 (discussing eligibility requirements for a First Step Act sentence reduction), and because Mr. Jackson was convicted of and sentenced under 21 U.S.C. § 841(b)(1)(A), he is eligible for a sentence reduction pursuant to the First Step Act. As the Court has discretion to reduce a defendant's sentence under the First Step Act, it now considers whether to reduce Mr. Jackson's sentence. *See id.* (discussing First Step Act § 404(c)).

**B.     Considering the § 3553(a) factors, the Court will reduce Mr. Jackson's sentence.**

Mr. Jackson was held accountable for 214.7 net grams of cocaine base, an A-level offense in 2007 that resulted in a guideline imprisonment range of 360 months to life. (PSR ¶ 97.) After he pleaded not guilty, the Government filed the mandatory life enhancement pursuant to 21 U.S.C. § 851 due to his three prior felonies. (*See id.* ¶¶ 2, 97.) After the Fair Sentencing Act, Mr. Jackson's offense becomes a B-level offense, resulting in a guideline range of 5 to 40 years in custody. (*See* Doc. 146 at 1.) Pursuant to 21 U.S.C. § 851, that penalty increases to a mandatory minimum of 10 years and a maximum of life imprisonment. (*Id.*) Considering the total offense level of 37 and criminal history category of VI, the guidelines range is 360 months to life. (*Id.* at 1–2.)

The Court need not conduct a full resentencing for a First Step Act-eligible defendant, but may consider the 18 U.S.C. § 3553(a) factors in exercising its discretion whether to reduce a sentence. *See Lewis*, at 398 F. Supp. 3d at 974. Importantly, the Court now considers that one of the purposes of the Fair Sentencing Act was "to remedy the significant disparity between the

penalties for cocaine base and powder cocaine offenses." *Freeman v. United States*, 564 U.S. 522, 528 (2011), *holding modified by Hughes v. United States*, 138 S. Ct. 1765 (2018) (citation omitted).

Mr. Jackson has been in custody approximately 13 years and 8 months. (Doc. 146 at 2.) He asks the Court for a reduction in his sentence, as well as "a downward departure from the bottom of his guideline sentence." (Doc. 139 at 6.) He asserts that a sentence between 151 and 188 months would satisfy the retribution, deterrence, incapacitation, and rehabilitation requirements of § 3553(a). (*Id.*)

Mr. Jackson argues that the Court should focus heavily on his post-offense rehabilitation, because "the punishment should fit the offender and not merely the crime." (*Id.* at 7 (quoting *Pepper v. United States*, 562 U.S. 476, 487–88 (2011)).) In *Pepper*, the United States Supreme Court recognized that sentencing courts, on resentencing, have discretion to "consider[] postsentence rehabilitation for purposes of imposing a non-Guidelines sentence . . . ." 562 U.S. at 480–81. There, the defendant was convicted of conspiracy to distribute 500 grams or more of methamphetamine and received "a 24-month prison term, resulting in an approximately 75-percent downward departure from the low end of the Guidelines range," due in part to his substantial assistance. *Id.* at 481–82. The Government appealed, and the defendant completed his 24-month sentence three days after the appellate court reversed and remanded for resentencing for an unrelated reason. *Id.* at 482. At the resentencing hearing, the court heard testimony that the defendant "completed a 500-hour drug treatment program while in prison and" was still drug-free, was "enrolled at a local community college as a full-time[,]" straight-A student, was employed and in compliance with all conditions of release, and had re-established a relationship with his father. *Id.* at 482–83. The sentencing court again sentenced the defendant to a 24-month sentence, well below the Guidelines range. *Id.* at 483. The Supreme Court found that the district court had

not abused its discretion by considering the "postsentencing rehabilitation to support a downward variance when resentencing the defendant." *Id.* at 487.

Here, Mr. Jackson asserts that his record in prison provides a more "up-to-date picture of his 'history and characteristics'" and demonstrates that "he will not engage in future criminal conduct, a factor courts are required to consider when imposing a sentence." (Doc. 139 at 8 (citing 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(C); *Pepper*, 562 U.S. at 491).) He has completed over 150 hours of addiction programming; "a year-long (400-hour) culinary arts program where he received great reviews from instructors and established a great work ethic which will help him succeed upon reentry"; an 18-month faith-based Life Connection Program that is highly regarded and selective with "a strict curriculum aimed (i) at development and maturation of normative values and responsibilities and (ii) to better prepare incarcerated men and women for reentry into society." (*Id.* at 8–9 (citation omitted).) Graduates of the Life Connection Program have "a recidivism rate lower than 10%."[2] (*Id.* at 9.)

Mr. Jackson has committed to maintaining an active role in his children's lives through letters and phone calls. (*Id.* at 13.) "It is with great pride that [he] is able to say [that] all of his children are in school, one finishing college, one starting college, and the others in high school and middle school. None of his children suffer from drug or alcohol abuse, and none of his children have ever been arrested." (*Id.*) It is his intent "to break the cycle" that this Court discussed at his sentencing hearing "before passing down his bad habits to his children." (*Id.*; *see also* Doc. 76 at 10–11.)

With almost 14 years in prison, "Mr. Jackson has only had three infractions." (*Id.* at 10.) The first "in 2010 for having sharp objects in his cell." (*Id.*) The second "in 2012 for talking back

---

[2] Mr. Jackson lists a variety of other courses he has completed. (*See* Docs. 139 at 8; 139-C.)

6

to a staff member." (*Id.*) And the third in 2014 for fighting with other inmates. (*Id.*)

Mr. Jackson argues that a sentence of 151 to 188 months will deter similar conduct and serve as a warning to others, and it will protect the public from any future crimes on his behalf. (*Id.* at 14.) Upon release from prison, Mr. Jackson plans to live with an aunt in Austin, Texas while he seeks employment. (*Id.* at 17 (citing Doc. 139-E at 6).) He plans to secure work in the food service industry as a result of several certificates he has earned while in prison. (*Id.* (citing Doc. 139-F).) He "excelled so much throughout" two of his culinary programs that "he is [now] a class instructor in prison[,]" teaching "all five certification classes to inmates interested in culinary skills." (*Id.*) Mr. Jackson's family and friends are also committed to supporting him after his release. (*Id.* at 18 (citing Doc. 139-E).)

The United States urges the Court to sentence Mr. Jackson to 360 months, the low end of the Guidelines range.[3] (Doc. 144 at 4–5.) It emphasizes the seriousness of his drug crime and his criminal history, which involves 14 criminal violations. (*Id.* at 5–6.) While "[t]he United States understands and applauds" Mr. Jackson's "extensive effort to better himself and continue his education[,] . . . his efforts while incarcerated do not erase the fact that his entire adolescence and adult life, up until the time of his incarceration, were plagued by drug use and never ending criminal conduct." (*Id.* at 6.) The Court is cognizant, however, of Mr. Jackson's childhood and the influences around which he was raised (*see*, *e.g.*, PSR ¶¶ 66–69), and hopes that the past 14 years in prison were the impetus for lasting life changes.

---

[3] The United States also contends that "there is an equitable argument that [Mr. Jackson's] sentence should not be reduced below the guideline range[,]" because "[r]esentencing below the guideline range was not allowed after the passage of the Fair Sentencing Act" and before passage of the First Step Act. (Doc. 144 at 6–7.) The United States does not cite any authority in support of this notion, however. (*Id.*) And as Mr. Jackson point out, "many courts have recently imposed downward departure sentences in First Step Act cases related to defendants deemed career offenders who were serving mandatory [§] 851 sentences like Mr. Jackson." (Doc. 145 at 3 (gathering cases).)

7

Ultimately, the Court finds that, given the nature of the offense, Mr. Jackson's background and criminal history, and his conduct in prison, he is eligible for a reduction in his sentence as follows: the Court will impose a sentence of 200 months for the single count of possession with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of cocaine base. This sentence adequately punishes Mr. Jackson's illegal conduct while serving as a deterrent and protecting the public.

The Court directs Mr. Jackson to continue improving his chances at a successful transition out of prison by continuing to pursue all educational and vocational programs available to him, and by continuing to commit to drug and alcohol counseling (through a 12-step program or otherwise) while he is incarcerated. It is the undersigned's hope that Mr. Jackson will prove to be another success story after his release from prison.

**THEREFORE,**

**IT IS ORDERED** that Steve Nathaniel Jackson's Motion for Imposition of Reduced Sentence Pursuant to Section 404 of the First Step Act is **GRANTED IN PART**; and

**IT IS FURTHER ORDERED** that Mr. Jackson shall be **RESENTENCED** in accordance with this Opinion.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE